FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 2 9 2017

JAMES W. McCORMACK, CLERK
By:
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION**

**BAD BOY, INC.**                                                                    **PLAINTIFF**

v.                          NO. CV- *1:17cv70-BSM*

**INTIMIDATOR, INC. AND
RF PRODUCTS, INC.**                                                    **DEFENDANTS**

This case assigned to District Judge *Miller*
and to Magistrate Judge *Volpe*

**COMPLAINT**

Comes now the Plaintiff, Bad Boy, Inc., by and through its undersigned attorneys, and for its

complaint against the Defendants, Intimidator, Inc. ("Intimidator") and RF Products, Inc. ("RF

Products"), alleges and states the following:

1.      Plaintiff is a corporation organized and existing under the laws of the State of

Arkansas, with its principal place of business located in Batesville, Arkansas. Plaintiff engages in the

manufacture and sale of residential and commercial grade zero turn mowers under the trademark

BAD BOY. Plaintiff does substantial business in the State of Arkansas, including the Eastern District

of Arkansas, Batesville Division.

2.      Defendant Intimidator is a corporation organized and existing under the laws of the

State of Arkansas, with its principal place of business located in Batesville, Arkansas. Intimidator

manufactures residential and commercial grade zero turn mowers under the trademark SPARTAN.

Intimidator does substantial business in the State of Arkansas, including the Eastern District of

Arkansas, Batesville Division.

3.      Defendant RF Products is a corporation organized and existing under the laws of the

State of Arkansas, with its principal place of business located in Batesville, Arkansas. RF Products

sells and markets residential and commercial grade zero turn mowers under the trademark

SPARTAN. RF Products does substantial business in the State of Arkansas, including the Eastern

District of Arkansas, Batesville Division.

4.      Intimidator and RF Products (collectively "Defendants") have common ownership, specifically Robert Foster.

5.      Defendants have made and/or sold SPARTAN mowers, including the infringing mowers that are the subject of this lawsuit, in the State of Arkansas, including the Eastern District of Arkansas, Batesville Division.

6.      This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1338. More specifically, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1338(a) because the claims in this case arise under the Patent Act, 35 U.S.C. § 271, *et seq.*

7.      This Court has personal jurisdiction over Defendants and venue is proper in the Eastern District of Arkansas, Batesville Division, pursuant to 28 U.S.C. §1391(b) and (c) and 28 U.S.C. §1400 in that Defendants reside in the Eastern District of Arkansas, Batesville Division, regularly transact business in the Eastern District of Arkansas, Batesville Division, and have committed the acts complained of herein within the Eastern District of Arkansas, Batesville Division, and elsewhere, which acts have caused injury to Plaintiff both within the Eastern District of Arkansas, Batesville Division, and elsewhere.

8.      Plaintiff has manufactured and sold residential and commercial grade zero turn mowers for many years.

9.      Prior to November of 2013, Robert Foster, a principal of Defendants, was a shareholder of Plaintiff. In November of 2013, Robert Foster sold all of his shares in Plaintiff.

10.     On August 15, 2017, after a full and fair examination, the United States Patent and Trademark office duly and legally issued US Patent No. 9,730,386, entitled "Suspension System for Lawnmowers" ("'386 Patent"). A true and correct copy of the '386 Patent is attached hereto and incorporated herein as Exhibit "A". By means of an assignment recorded at the United States Patent and Trademark Office on January 6, 2017, the Inventors, Charles Bradley Covington and Warren Long, assigned all rights, title, and interest in the patent application granted as the '386 Patent to Plaintiff. A true and correct copy of the assignment is attached hereto and incorporated herein as Exhibit "B". The '386 Patent was issued to the Plaintiff as the assignee.

11.     Since its issuance, Plaintiff's '386 Patent has been in full force and effect. Plaintiff owns all right, title and interest in the '386 Patent, including the right to sue for past, present and future infringements.

12.     Defendants are making, using, selling, and/or offering for sale mowers that infringe on one or more claims of the '386 Patent. The infringing mowers are marketed by Defendants under the name "SPARTAN SRT" and possibly other names as well.

13.     Defendants have sold their infringing mowers to retail stores within the State of Arkansas and advertise their infringing mowers via internet websites including one they maintain (i.e. www.spartanmowers.com) that is accessible from the Eastern District of Arkansas, Batesville Division. Upon information and belief, Defendants also own and operate interactive websites, including www.spartanmowers.com, that market the infringing mowers. Furthermore, Defendants' infringing mowers may be obtained by consumers at retail establishments within the Eastern District of Arkansas, Batesville Division.

14.     The infringing mowers utilize a suspension system that infringes the '386 Patent.

3

15.     Defendants continue to willfully infringe on Plaintiff's '386 Patent.

16.     Defendants will continue to infringe on Plaintiff's '386 Patent unless enjoined and restrained by the Court. As a direct and proximate result of Defendants' patent infringement, Plaintiff has suffered and will continue to suffer irreparable harm. In addition, Plaintiff has been, and will continue to be, harmed and injured in its business and property and has sustained, and will continue to sustain, damages to its business, property and profits.

## COUNT 1 (PATENT INFRINGEMENT)

17.     Plaintiff restates and incorporates the allegations contained in paragraphs 1-16 herein.

18.     The above-referenced patent, United States Patent Number 9,730,386 (the '386 Patent), is valid, was duly and legally issued by the United States Patent and Trademark Office, and is owned exclusively by Plaintiff.

19.     Defendants are making, using, selling, and/or offering for sale mowers, which infringe on one or more claims of United States Patent Number 9,730,386 in contravention of 35 U.S.C §271.

20.     Defendants' activities with respect to Plaintiff's patent have been without the express or implied license of Plaintiff.

21.     Defendants have directly infringed, both literally and/or under the doctrine of equivalents, the '386 Patent, and continues to directly infringe the '386 Patent.

22.     Defendants' infringement of the '386 Patent is willful.

23.     Defendants' infringing actions have caused, and will continue to cause if not enjoined, irreparable harm to Plaintiff.

24.     Plaintiff is entitled to a permanent injunction prohibiting Defendants from infringing

4

upon the '386 Patent.

25.     Plaintiff has been, and will continue to be, harmed and injured in its business and property and has sustained, and will continue to sustain, damages to its business, property and profits, for which it is entitled to judgment.

26.     Defendants' past and continuing infringement of the '386 Patent has been deliberate and willful.

27.     Defendants' conduct warrants an award of treble damages pursuant to 35 U.S.C. §284.

28.     Defendants' conduct warrants a finding of an exceptional case and an award of attorneys' fees to Plaintiff pursuant to 35 U.S.C. §285.

29.     Plaintiff is entitled to actual and enhanced damages for Defendants' willful infringement acts as determined at the trial of this matter, and to reasonable attorney's fees, costs and interest.

WHEREFORE, the Plaintiff, Bad Boy, Inc., prays that it be granted judgment against the Defendants, Intimidator, Inc. and RF Products, Inc., jointly and severally, and that it be awarded the following relief:

A.     A judgment that Plaintiff's '386 Patent is valid and enforceable and that Defendants have willfully infringed and actively induced others to infringe the '386 Patent.

B.     A permanent injunction prohibiting Defendants from infringing upon the above referenced patent, as provided in 35 U.S.C. §283.

C.     An award of monetary damages adequate to compensate Plaintiff for Defendants' infringement, but in no event less than a reasonable royalty as provided under 35 U.S.C. §284.

D.      An award of treble damages under 35 U.S.C. §284 as a result of Defendants' willful infringement of the '386 Patent.

E.      An award of costs and interest.

F.      A judgment that this case is exceptional and that Defendants be ordered to pay Plaintiff reasonable attorneys' fees as provided by 35 U.S.C. §285.

G.      An award of such further and additional relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

Trent C. Keisling, #93226
KEISLING & PIEPER, PLC
501 W. Cassatt
P.O. Box 10379
Fayetteville, AR 72703
(479) 251-0800 - Telephone
(479) 251-0801 - Facsimile

FUQUA CAMPBELL, P.A.
Riviera Tower
3700 Cantrell Road, Suite 205
Little Rock, Arkansas 72202
(501) 374-0200 – Telephone
(501) 975-7153 – Facsimile

By:  _____
Phil Campbell, Ark. Bar No. 81028
Blake Hendrix, Ark Bar No. 86066
Eric Gribble, Ark. Bar No. 2002192
Haley Burks, Ark. Bar No. 2011286

ATTORNEYS FOR PLAINTIFF BAD BOY, INC.

6



US009730386B1

(12) **United States Patent**
Covington et al.

(10) Patent No.: **US 9,730,386 B1**
(45) Date of Patent: **Aug. 15, 2017**

(54) **SUSPENSION SYSTEM FOR LAWNMOWER**

(71) Applicants: **Charles Bradley Covington**, Batesville, AR (US); **Warren Long**, Batesville, AR (US)

(72) Inventors: **Charles Bradley Covington**, Batesville, AR (US); **Warren Long**, Batesville, AR (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **14/735,640**

(22) Filed: **Jun. 10, 2015**

**Related U.S. Application Data**

(60) Provisional application No. 62/010,634, filed on Jun. 11, 2014.

(51) **Int. Cl.**
| | |
|---|---|
| *A01D 34/82* | (2006.01) |
| *A01D 34/64* | (2006.01) |
| *B62D 11/06* | (2006.01) |
| *B60G 3/00* | (2006.01) |

(52) **U.S. Cl.**
CPC ............. *A01D 34/82* (2013.01); *A01D 34/64* (2013.01); *B60G 3/00* (2013.01); *B62D 11/06* (2013.01)

(58) **Field of Classification Search**
CPC ...... B60K 7/0015; B60K 17/105; B60K 17/10; A01D 34/63; A01D 34/64
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,442,831 A | 6/1948 | Suttles | 16/44 |
| 2,689,136 A | 9/1954 | Hendrickson | 280/104.5 |
| 2,915,776 A | 12/1959 | Hanson et al. | 16/44 |
| 3,669,467 A | 6/1972 | Dunlap et al. | 280/124 |
| 3,737,174 A | 6/1973 | Hickman | 280/124 |
| 4,310,717 A | 1/1982 | Eastman et al. | 585/661 |
| 4,485,521 A | 12/1984 | Welsch et al. | 16/44 |
| 4,559,669 A | 12/1985 | Bonzer et al. | 16/44 |
| 5,400,469 A | 3/1995 | Simonsen | 16/44 |
| 5,542,494 A * | 8/1996 | Louis | B60K 17/10 180/305 |
| 5,899,470 A | 5/1999 | Heitzmann | 280/86.751 |
| 5,979,920 A | 11/1999 | Krakowiak et al. | 280/124.175 |
| 6,170,242 B1 | 1/2001 | Gordon | 56/15.8 |
| 6,460,318 B1 | 10/2002 | Ferris et al. | 56/15.8 |
| 6,644,425 B1 * | 11/2003 | Hauser | B60K 17/105 180/6.48 |
| 6,732,828 B1 * | 5/2004 | Abend | A01D 34/63 180/242 |
| 6,845,837 B2 * | 1/2005 | Ohashi | B60K 7/0015 180/235 |
| 6,848,937 B1 * | 2/2005 | Hsiao | H02G 11/02 439/501 |
| 6,857,254 B2 | 2/2005 | Melone et al. | 56/15.8 |

(Continued)

*Primary Examiner* — Hau Phan
(74) *Attorney, Agent, or Firm* — Keisling & Pieper PLC; Trent C. Keisling

(57) **ABSTRACT**

In a riding mower having a frame, a mower deck supported beneath the frame, a chair on said frame and a source of motive power also supported on said frame and including two hydraulic transaxles depending beneath the frame to each selectively rotate a drive wheel. The frame is supported on forward and rear wheel assemblies with a supporting wheel. The transaxles are supported beneath the frame and pivotally secured thereto by a flange captivating vibration pillows and proximate the driven wheel and an inner pivot rod secured to the frame by apertures in downwardly depending tabs.

**9 Claims, 5 Drawing Sheets**



EXHIBIT

A

## US 9,730,386 B1
Page 2

(56)                  **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 7,127,889 B1 * | 10/2006 | Bennett ................ | B60K 17/105 |
| | | | 60/464 |
| 7,363,759 B2 * | 4/2008 | Ohashi ................ | B60K 7/0015 |
| | | | 180/242 |
| 7,455,114 B2 * | 11/2008 | MacDougall ....... | E21B 33/1294 |
| | | | 166/243 |
| 7,588,104 B2 * | 9/2009 | Ohashi ................ | B60K 7/0015 |
| | | | 180/235 |
| 7,708,292 B2 | 5/2010 | Foster ................... | 280/124.117 |
| 8,733,478 B2 * | 5/2014 | Chapman ............. | G03B 17/561 |
| | | | 180/24.07 |
| 2007/0029118 A1 * | 2/2007 | Acharya .............. | B60K 7/0015 |
| | | | 180/53.4 |

* cited by examiner



*FIG. 1*



*FIG. 2*



*FIG. 3*



FIG. 4

FIG. 7

FIG. 6

FIG. 5



68 — — 68

Pivot Points

*FIG. 8*



70

*FIG. 9*

US 9,730,386 B1

**1**

# SUSPENSION SYSTEM FOR LAWNMOWER

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims priority to and is a continuation of U.S. application Ser. No. 62/010,634 filed on Jun. 11, 2014 entitled SUSPENSION SYSTEM FOR LAWNMOWER. Each of these applications is hereby expressly incorporated by reference in their entirety.

## STATEMENT REGARDING FEDERALLY SPONSORED RESEARCH OR DEVELOPMENT

Not Applicable.

## REFERENCE TO A MICROFICHE APPENDIX

Not Applicable.

## RESERVATION OF RIGHTS

A portion of the disclosure of this patent document contains material which is subject to intellectual property rights such as but not limited to copyright, trademark, and/or trade dress protection. The owner has no objection to the facsimile reproduction by anyone of the patent document or the patent disclosure as it appears in the Patent and Trademark Office patent files or records but otherwise reserves all rights whatsoever.

## BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates generally to riding mowers and, more particularly, to an improved suspension system for motive systems on such mowers or the like. Known art can be found in U.S. Class 280, subclass 124 and in other classes and subclasses.

2. Description of the Known Art

Those skilled in the art will appreciate that riding mowers have been a staple for maintaining residential yards, commercial lawns, golf courses and highway rights of way for many years. They are seen moving along grass in many settings including grassy center dividers and along the sides of roads in rough, sometimes rocky terrain, and in all sorts of attitudes from flat and level to severe side hills.

In many instances, an operator may be in the seat for hours, and even with a kidney belt, will suffer considerable discomfort and, in some cases, injury. Indeed, it is not inconceivable that the constant bouncing and jarring could cause an operator to lose control, resulting in damage to the operator and others.

The underlying purpose and function of the present invention is to provide an element of relief to an operator and increased vehicle control. The invention disclosed in U.S. Pat. No. 7,708,292 issued to Foster deals with these issues. While this invention works well for its intended purpose, an improved system that places a hydrostatic axle proximate a drive wheel improves vehicle stability while also promoting operator comfort.

Most of the other known riding mowers in use today have their wheels affixed directly to the frame of the mower. In the late '90s the proclaimed leader in the field, David Ferris, and others filed an application for a suspension system for riding mowers. The application claims priority based on provisionals, at least one of which dates back to 1996, and

**2**

was divided and one of those continuations-in-part issued as Ferris et al. U.S. Pat. No. 6,460,318. The patent features a four bar mechanism relatively common in automotive suspensions.

Known art which may be relevant to the present invention includes the following patents with their abstracts, the teachings of which are incorporated by reference.

Gordon U.S. Pat. No. 6,170,242 is yet another patent assigned to Ferris Industries and claims priority under a 1997 provisional, which is also claimed under the earlier mentioned Ferris et al. patent. Gordon, like Ferris et al., features a four bar mechanism.

A very early patent featuring a rubber bumper between two elements in an automotive structure is found in Hickman U.S. Pat. No. 3,737,174.

Several other patents offer variations on the same theme. See, for example, Dunlap et al. U.S. Pat. No. 3,669,467, which has additional buffering devices, such as springs, leaf or coil, and shock absorbing devices. Dunlap has a pair of cushions, but also uses a pair of rods 32 and 34, which attach directly to the frame rail.

Krakowiak et al. U.S. Pat. No. 5,979,920, uses the simple bumper between the frame rail and a leaf spring. This is a device which is common on many of the earlier motor vehicles.

Merkle U.S. Pat. No. 4,310,717, uses what he refers to as an elastomeric spring, again, between the frame rail and what he refers to as a web section which holds the axle upon which the wheel is connected. It appears in the drawing that there may be a shock absorber in the middle of this assembly.

Bonzer et al. U.S. Pat. No. 4,559,669, employs a resilient buffer 19 for a caster assembly. Heitzman U.S. Pat. No. 5,899,470 uses a couple of resilient buffers as part of a system for adjusting camber and caster. It is evident from these patents that using an elastomeric as a spring or shock absorber is not new in the art. All of these references seek, to a greater or lesser extent, some modulation of the amplitude and frequency of shock transmitted through a wheel of a vehicle, but are unsuited for a riding mower.

Also, commercially available equipment and components may be relevant, including hollow metal frames, shoe brushes and the like. Such equipment may be used in implementing an exemplary embodiment in accordance with the present invention.

None of these references, either singly or in combination, disclose or suggest the present invention. It is desirable to have a improved lawnmower to address the perceived shortcomings of the known art.

While it is evident from past attempts that suspension systems for lawnmowers are desirable, the known art is limited in its teaching and utilization, and an improved system is needed to overcome these limitations. An improved suspension system should provide a simple and efficient system for meeting the various needs of the users and the like.

## SUMMARY OF THE INVENTION

The present invention addresses the perceived needs in the known art discussed above. In this regard, the present invention substantially fulfills this need. The suspension system for lawnmower may be advantageously used with zero-turn lawnmowers or others using transaxles combined with hydraulic pumps for motive power and the like. The transaxles are dampened by at least one pillow interposed between the frame the wheel with each pillow being of a

US 9,730,386 B1

3                                                                                                    4

resilient material for absorbing shock and vibration resulting from a wheel contacting irregularities in the terrain traversed thereby.

In one exemplary embodiment in accordance with the present invention an improved suspension system may be used with the rear axles to provide a motive source proximate the driven rear wheels and substantially isolated from the frame of the lawnmower to thereby dampen vibrations transmitted to the operator as the vehicle traverses the ground.

The apparatus of the invention is capable of receiving additional, optional features which are not a part of the present invention. For example, a purchaser or user may specify an optional mulcher or bagger or the like for a lawnmower. Other optional features, some of which may be illustrated herein, may or may not be included with apparatus incorporating the basic aspects of present invention.

In addition to providing the features and advantages referred to above, it is an object of the present invention to provide an improved suspension system for lawnmower.

Another object of the present invention is to provide an lawnmower with a lowered center of gravity.

A basic object of the present invention is to provide a more stable lawnmower.

Yet another object of the present invention is to enhance user comfort.

A related object of the present invention is to provide a safer lawnmower.

These and other objects and advantages of the present invention, along with features of novelty appurtenant thereto, will appear or become apparent by reviewing the following detailed description of the invention in conjunction with the appended drawings.

BRIEF DESCRIPTION OF THE SEVERAL VIEWS OF THE DRAWINGS

In the following drawings, which form a part of the specification and which are to be construed in conjunction therewith, and in which like reference numerals have been employed throughout wherever possible to indicate like parts in the various views:

FIG. 1 is a perspective view of a riding mower in accordance with an embodiment of the present invention;

FIG. 2 is a perspective view of the frame of the mower with the rear axle assembly shown;

FIG. 3 is an enlarged perspective view of the encircled portion of FIG. 2;

FIG. 4 is a top plan view of the frame;

FIG. 5 is a bottom plan view thereof;

FIG. 6 is an elevational view taken from the side with the opposite side being a mirror image thereof;

FIG. 7 is an elevational view taken generally from the rear thereof;

FIG. 8 is an enlarged elevational view taken generally from the rear thereof and similar to FIG. 7 but showing movement; and,

FIG. 9 is an enlarged bottom plan view and similar to FIG. 5 but showing movement and axes of rotation.

DETAILED DESCRIPTION OF THE INVENTION

The present invention addresses the perceived needs in the known art discussed above. In this regard, the present invention substantially fulfills this need. The improved suspension system for lawnmower includes a vibration damping system with transaxles that are attached to the rear axle assemblies that also provide motive power thereto.

In one exemplary embodiment in accordance with the present invention and shown in FIGS. 1-9, an improved riding mower 11 is illustrated. The mower 11 has a frame 16 supported by a pair of forward wheel assemblies 18 and rear wheel assemblies 72.

The frame 16 supports a mower deck 25, and a chair 27 is provided for a driver, with a pair of steering arms 29 within easy reach. A motor compartment 32 rides on the frame and provides motive power to the mower through right and left integrated hydrostatic transaxles 65 that drive right and left rear wheels 72 in response to operator manipulation of control handles 29.

One important feature of the present invention is the provision of the mower 11 which has enhanced comfort and less fatigue for the driver, all of which increases the ability of the driver to control the mower, even in unusual attitudes resulting from irregularities in the terrain, and over extended periods of operation, and particularly where terrain changes are abrupt. In accomplishing its objectives, both forward and rear systems of vibration control are interposed between each of the supporting wheel assemblies and the frame of the mower.

It is a feature of the present invention that a rear suspension system is provided with vibration damping capability. Referring to FIGS. 2-10, the rear segment 62 of the frame 16 supports two spaced apart rear axle transaxles 65, which are mounted transverse to the longitudinal axis of the mower 11.

The frame supports downward flanges 66 that captivate a portion of each transaxle 65 on the sides of the mower 11. Each of the transaxles 65 supports an outer driven wheel assembly 72 through an axle 73 and, in keeping with the objectives of the invention, are articulated about a pivot pin 74 (which may be a bolt and nut or other similar device) in a plane transverse to the plane of the transaxle housing. The pivot pin 74 is secured in apertures 76 in tabs 78 depending from the frame 62. Companion apertures 78 align with the apertures 76 to receive the pivot pins 74 which then permit pivotal movement thereabout.

Movement of the wheel assemblies 72 is limited and vibration is dampened by the provision of damping pillows 81 which are secured between the downwardly depending frame flanges 60 on the forward and rear sides of the transaxles 65. The pivotal movement of each transaxle 65 is shown by arrow 68 with the axes of rotation indicated by lines 70, which corresponds to an accompanying compression or extension of the affected pillows 81 (FIGS. 8 and 9).

Each pillow 81 is resilient and may be of any one of several durometers of rubber hardness, or may be of other suitable elastomeric materials, including elastic shells with a liquid or other compressible material there within, appropriate to the weight of the mower and the terrain to be traversed. The pillows define a cushion between the wheel and the frame of the mower, thereby absorbing shock created by the wheel moving over the uneven terrain. Further, each wheel functions independently, i.e., independent of the frame, in order that it may respond independently to variations in the terrain met by each individual wheel, which may be several feet removed from its companion wheel.

The pillows 81 are positioned between such flanges and a bolt 85 passes through the longitudinal axis of each pillow and is secured in apertures in the aligned flanges to thereby hold the pillow between them. The pillow is sized to abut the flanges above and beneath each, where it is held in place by bolts, and the pillow is compressed by the rapid upward movement of a wheel assembly, thereby dampening that

US 9,730,386 B1

5

movement and inhibiting, or at least modulating, transmission of that movement to the frame of the mower. The rapid movement resulting from the traversing of rocks and other debris is particularly well dampened. Moreover, if the wheel were to move downwardly, in a pot hole for example, it is inhibited from moving too rapidly or too far from its unstressed position.

The apparatus of the invention is capable of receiving additional, optional features which are not a part of the present invention. For example, a purchaser or user may specify an optional railing or grab bars may be included to facilitate handling of the device during deployment. Other optional features, some of which may be illustrated herein, may or may not be included with apparatus incorporating the basic aspects of present invention.

In describing a preferred embodiment of the invention illustrated in the drawings, specific terminology has been used for the sake of clarity. However, the invention is not intended to be limited to the specific terms selected, and it is to be understood that each specific term includes all technical equivalents which operate in a similar manner to accomplish a similar purpose.

What is claimed is:

1. A riding mower adapted to traverse the ground and having a frame with a mower deck supported beneath the frame and a chair supported on the frame and a source of motive power also supported on said frame, the mower further comprising:

a pair of forward wheels spaced apart from a pair of rear driven wheels, all of the wheels adapted to support the frame; and,

two hydraulic transaxles mounted beneath the frame to each selectively rotate a driven wheel when supplied motive power, where each transaxle is supported beneath the frame by at least one vibration pillow and pivotally secured to the frame so that each transaxle may move upwardly or downwardly in response to movement by its driven wheel and wherein each of the driven wheels can pivot upwardly or downwardly as the mower traverses the ground and wherein upward wheel movement is dampened by the vibration pillows.

2. The mower as described in claim 1 wherein each transaxle is proximate a driven wheel.

3. The mower as described in claim 2 wherein each transaxle is secured to the frame by a rod which permits the transaxle to pivot upwardly or downwardly in conjunction with driven wheel movement upwardly or downwardly.

4. The mower as described in claim 3 wherein each rod spans between spaced apart downwardly depending tabs secured to the frame.

5. A riding mower adapted to traverse the ground and having a frame with a mower deck supported beneath the

6

frame and a chair supported on the frame and a source of motive power also supported on said frame, the mower further comprising:

a pair of forward wheels spaced apart from a pair of rear drive wheel assemblies, all of the wheels adapted to support the frame; and,

two hydraulic transaxles mounted beneath the frame to each selectively rotate a drive wheel through a drive axle when supplied motive power;

a flange secured to the frame proximate each driven wheel and above the drive axle;

at least two vibration pillows secured to each flange and captivating a portion of the drive axle extending between the transaxle and the driven wheel and wherein each of the driven wheels can pivot upwardly or downwardly as the mower traverses the ground and upward wheel movement is dampened by the vibration pillows; and,

an inner pivot rod secured to the frame between downwardly depending tabs integrally mounted to the frame proximate a driven wheel, the pivot rod extending through the transaxle.

6. The mower as described in claim 5 wherein each transaxle may pivot about the rod to move upwardly or downwardly in conjunction with its driven wheel.

7. The mower as described in claim 6 wherein the vibration pillows dampen and inhibit transaxle pivotal movement about the rod.

8. A riding mower adapted to traverse the ground and having a frame with a mower deck supported beneath the frame and a chair supported on the frame and a source of motive power also supported on said frame, the mower further comprising:

a pair of forward wheels spaced apart from a pair of rear drive wheel assemblies, all of the wheels adapted to support the frame; and,

two hydraulic transaxles mounted beneath the frame to each selectively rotate a drive wheel when supplied motive power; where each transaxle is supported beneath the frame and pivotally secured thereto by a flange captivating vibration pillows and proximate the driven wheel and an inner pivot rod secured to the frame by apertures in downwardly depending tabs mounted to the frame and wherein each of the driven wheels can pivot upwardly or downwardly as the mower traverses the ground and wherein upward wheel movement is dampened by the vibration pillows.

9. The mower as described in claim 8 wherein each transaxle may move upwardly or downwardly in conjunction with its driven wheel.

* * * * *



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

JANUARY 9, 2017

PTAS

KEISLING & PIEPER, PLC
P.O. BOX 10379
FAYETTEVILLE, AR 72703

# 504166346

UNITED STATES PATENT AND TRADEMARK OFFICE
NOTICE OF RECORDATION OF ASSIGNMENT DOCUMENT

THE ENCLOSED DOCUMENT HAS BEEN RECORDED BY THE ASSIGNMENT RECORDATION BRANCH
OF THE U.S. PATENT AND TRADEMARK OFFICE. A COMPLETE COPY IS AVAILABLE AT THE
ASSIGNMENT SEARCH ROOM ON THE REEL AND FRAME NUMBER REFERENCED BELOW.

PLEASE REVIEW ALL INFORMATION CONTAINED ON THIS NOTICE. THE INFORMATION
CONTAINED ON THIS RECORDATION NOTICE REFLECTS THE DATA PRESENT IN THE PATENT
AND TRADEMARK ASSIGNMENT SYSTEM. IF YOU SHOULD FIND ANY ERRORS OR HAVE
QUESTIONS CONCERNING THIS NOTICE, YOU MAY CONTACT THE ASSIGNMENT RECORDATION
BRANCH AT 571-272-3350. PLEASE SEND REQUEST FOR CORRECTION TO: U.S. PATENT
AND TRADEMARK OFFICE, MAIL STOP: ASSIGNMENT RECORDATION BRANCH, P.O. BOX
1450, ALEXANDRIA, VA 22313.

RECORDATION DATE: 01/06/2017          REEL/FRAME: 040868/0307
                                      NUMBER OF PAGES: 5

BRIEF: ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

DOCKET NUMBER:   022827

ASSIGNOR:
  COVINGTON, CHARLES BRADLEY          DOC DATE: 01/04/2017

ASSIGNOR:
  LONG, WARREN RUSSELL                DOC DATE: 01/04/2017

ASSIGNEE:
  BAD BOY, INC.
  102 INDUSTRIAL DRIVE
  BATESVILLE, ARKANSAS 72501

APPLICATION NUMBER: 14735640          FILING DATE: 06/10/2015
PATENT NUMBER:                        ISSUE DATE:
TITLE: SUSPENSION SYSTEM FOR LAWNMOWER

ASSIGNMENT RECORDATION BRANCH
PUBLIC RECORDS DIVISION



**EXHIBIT**

B

## ASSIGNMENT

WHEREAS, CHARLES BRADLEY COVINGTON, a citizen of the United States, residing at 2640 Newport Rd., Batesville, Arkansas 72501, and WARREN RUSSELL LONG, a citizen of the United States, residing at 345 Heber Springs Rd., Batesville, Arkansas 72501, (hereinafter called ASSIGNORS), have invented certain new and useful improvements in SUSPENSION SYSTEM FOR LAWNMOWER, which they have made application for Letters Patent of the United States, the said application having a Serial No. 14/735,640 and filing date of June 10, 2015;

WHEREAS, ASSIGNORS, the said inventors, are now the exclusive owners of said application, the invention described and claimed therein, and all rights in, to and under the same; and;

WHEREAS, BAD BOY, INC., an Arkansas Corporation doing business at 102 Industrial Drive, Batesville, Arkansas 72501 (hereinafter referred to as ASSIGNEE), is desirous of acquiring the entire right, title and interest in and to the aforementioned invention, application and in, to and under any and all Letters Patent of the United States and in any and all foreign countries thereof.

NOW, THEREFORE, this indenture witnesseth that for and in consideration of the sum of Two Dollars ($2.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNORS, the said inventors, have sold, assigned, transferred and set over and do hereby sell, assign, transfer and set over to the said ASSIGNEE, the said invention and application, and any and all divisions and continuations thereof, and any and all Letters Patent of the United States, its territorial possessions, and any and all foreign countries which may be granted therefor, and any and all reissues, extensions or certificates of reexamination of said

1

Letters Patent, including the right of priority and the subject matter of any and all claims which may be obtained in every such patent, the same to be held and enjoyed by the said ASSIGNEE for its own use and behoof, and for the use and behoof of its successors, assigns, or other legal representatives, to the end of the term or terms for which said Letters Patent of the United States, territories and foreign countries are or may be granted, reissued, extended, or reexamined as fully and entirely as same would have been held and enjoyed by ASSIGNORS, if this assignment and sale had not been made.

AND, ASSIGNORS hereby authorize and request the Commissioner of Patents to issue any and all Letters Patent of the United States on said invention, or resulting from said patent, and from any and all divisions and continuations, reissues, extensions, or reexaminations thereof to the said ASSIGNEE, of the entire interest, and hereby covenant that they have full right to convey the entire interest therein assigned, and that they have not executed and will not execute any agreement in conflict therewith.

AND, ASSIGNORS further hereby covenant and agree that they will, at any time, upon request, at the expense of said ASSIGNEE, execute and deliver any and all papers that may be necessary or desirable to perfect the title to said invention, and to said Letters Patent as may be granted therefor, in said ASSIGNEE, its successors, assigns, or other legal representatives, and that if said ASSIGNEE, its successors, assigns, or other legal representatives shall desire to file any divisional or continuation application, or to secure a reissue, extension or certificate of reexamination of such Letters Patent, or to file a disclaimer relating thereto, will, upon request, sign all papers, make all rightful oaths, and do all acts requisite for the filing of such divisional or continuing application, or such application for reissue or request for reexamination and procuring

2

thereof, and for the filing of such disclaimers, without further compensation, but at the expense of said ASSIGNEE, its successors or other legal representatives.

AND, ASSIGNORS do further covenant and agree, that they will, at any time, upon request, communicate to said ASSIGNEE, its successors, assigns, or other legal representatives, at its expense, such facts relating to said invention, application, and Letters Patent or the history thereof, as may be known to them, and testify as to the same in any interference or other litigation, when requested to do so.

IN WITNESS WHEREOF, we have hereunto set my hand.

1 | 4 | 2017
Date

CHARLES BRADLEY COVINGTON

STATE OF ARKANSAS          )
                           ) ss:
COUNTY OF Independence )

On this 4th day of January , 2016, before me personally appeared Charles Bradley Covington, to me known to be the person described hereinabove who executed the foregoing Assignment, and who acknowledged to me that he executed the same for the reasons and purpose therein set forth.

My Commission Expires:

09-12-2024
Notary Public

Adoree Swaim

```
ADOREE SWAIM
Notary Public-Arkansas
Independence County
My Commission Expires 09-12-2024
Commission # 12400761
```

3

1|4|2017
Date

_Wa_____
WARREN RUSSELL LONG

STATE OF ARKANSAS                )
                                 ) ss:
COUNTY OF Independence )

On this 4th day of January, 2016 17, before me personally appeared Warren Russell Long, to me known to be the person described hereinabove who executed the foregoing Assignment, and who acknowledged to me that he executed the same for the reasons and purpose therein set forth.

My Commission Expires:

09-12-2024

_Adoree Swaim_____
Notary Public

ADOREE SWAIM
Notary Public-Arkansas
Independence County
My Commission Expires 09-12-2024
Commission # 12400761

4